Case number 23-5126, United States v. Robert Whipple III. Argument not to exceed 15 minutes per side. Mr. Hedrick, you may proceed for the appellant. Thank you, ma'am. Good afternoon. May it please the court, my name is Joshua Hedrick. On behalf of the appellant, Robert Whipple, I'd like to reserve two minutes of my time for rebuttal arguments, your honors. Very good. Your honors, please, the district court erred in this case in denying Mr. Whipple's motion to suppress the warrantless search of his private Walmart pay data, and the district court erred in denying Mr. Whipple's motion to suppress the warrantless seizure of his automobile, and the district court erred in denying the motion to suppress the search of his cellular phone after the expiration of the search warrant. I'd like to focus my attention on the question relating to the Walmart records. I say that because I think that the question of the Walmart records is in many ways foundational in that it was that search that led to essentially everything that followed it in this case. I think that is almost a threshold inquiry. One of the things that struck me is that you have based your argument of an expectation of privacy in that information on a law review study of what people think about the privacy of their financial information that they have willingly given to a third party. What do you have to say about that's a rather unusual source for an expectation of privacy? Well, respectfully, your honor, I would urge the court that that's not my sole basis, but I do agree that that is a key portion. You agree that it's in there, and that's the beginning point for your analysis. It is, and I begin there because we have to determine what is it that society believes is reasonable in terms of our reasonable expectation of privacy. There's no better person to ask than society, and I rely on that law review article as it is, and as we sit today, sort of an unrebutted representation of what... In my experience, there's quite a few years of that experience right now, it's really common for financial records of various sorts to be obtained through subpoena. Grand jury subpoenas are issued for that sort of information all the time. Other kinds of subpoenas as well. This would be a real departure from kind of the accepted notion that it's a permissible way to get information of this type for law enforcement to do that through a subpoena. I'm not certain that we would think that it must be a departure, and the reason I say it doesn't necessarily have to be a departure is that we're really talking about different things. There are financial records like Miller, what I would call Miller records from the U.S. versus Miller case, deposit records, copies of checks that are pure financial records, and then there are records of purchases that are not really financial records, but records of a person's personal life. To draw the distinction, a subpoena to the bank may show that I spent $40 at Wal-Mart, whereas a subpoena to the Wal-Mart pay application would show that I spent that $40 on medication to treat venereal disease, for example. The bank records might or might not, it would depend on whether you probably indicated on the check what the purpose of the payment was, or the nature of the payee might indicate a good bit about what you'd spent money on. It may, but there's a difference. We urge the court to see that there is a difference between what you buy and how much you've spent, in that we are in a different world than those bank records cases. The cases for Miller, well, again, the credit card... What about if you subpoena American Express records? So you may see... What about phone records? So you may see... What about if you subpoena those? Yes, Your Honor, you may see from my credit card records that I spent money at Wal-Mart, but you would not necessarily, you cannot see from my credit card records what I bought, and it's what we buy that is the core of... Well, not necessarily. I mean, I remember discovering that I wanted my credit card records once, that there was a purchase of a wrestling video. Now, I assure you that that was not among my purchases, and so I called the credit card company and said, I did not purchase, and I believe that the video somehow originated in Hawaii, too, which would have made it especially unlikely that I would have made that purchase. So for me, that's an alarm to call the credit card company and say, somebody has fraudulently used my credit card, but it's the same kind of information. I've also had credit card companies ask me if I was shopping for a refrigerator at 3 o'clock. I mean, I don't know how, I'm just not sure how different this is from the kinds of records that have been routinely sought by subpoena. So the difference is that these are records that have a greater ability to demonstrate the personal businesses, the personal issues of life, the instances of life, like we hear about in the carpenter case, in a way that our society suggests, you know, the advent of these kind of online retailers has given us an extra layer of privacy, that this is a way for someone to anonymize their purchases. If I may, let's say... Let me ask you about your extra layer of anonymity. As soon as you buy something at the Wal-Mart, whether online or otherwise, and, for example, use your credit card, the next darn thing you know, you're getting ads and solicitations on your phone saying, wouldn't you like to buy this poncho instead? Now, is that a problem in terms of invasion of privacy? It's not a problem if Wal-Mart does it, because what you're describing is Wal-Mart remembering who you are and remembering what you've bought and suggesting other things that you may like based on your history. Suggesting to someone other than Wal-Mart, which is where these solicitations come from. Correct. They don't come from Wal-Mart. Sharing that data to another business entity, perhaps. The amount of data, what Your Honor has touched on, is that is a vast amount of data that is personal to the individual that we are saying the government has no business rummaging about in without some judicial process. Because it is so private and because it is so far-reaching, Your Honor, it raises, frankly, a better example than I could think of to Judge Gibbons' question about how this differs. Because the information in, say, Miller, for example, could not be so broad and so all-encompassing as to allow someone to identify what kind of medications I take, for example. This data can. This data can be used to say whether I have a particular disease or whether I'm using a contraception or whether I have stopped using contraception or whether I have done something else in my life that I would want to remain private. We have to consider that you could live your entire life inside a Wal-Mart, for better or for worse. So the amount of data... It would be for worse. I would not. It wouldn't be my choice, Your Honor, but it's doable. And so that is much more data than when we consider the cases cited by the government in its brief. These are cases about garbage left at the curb, letter... U.S. v. King in 95 where the husband gave the police letters his wife had written him, bank records and tax fraud cases. But most importantly, none of these cases is newer than 19 years prior to this subpoena in this case. Counsel, you know, most credit card companies will send to their customers copies of their privacy policy for users of those credit card accounts. And actually large merchandisers like Wal-Mart even will frequently send to their regular customers junk mail setting forth their privacy policy. Yes, Your Honor. So in order... Let's say your argument otherwise might have some viability legally. Would we need to know whether your argument is consonant with the privacy policy of the Wal-Mart or the credit card company in order to determine whether your client had a reasonable expectation of privacy? And of course that issue is not addressed in the briefs here, but if there's a... In order for you to make the argument, should you have been required to tell us whether what you are arguing is in accordance with or not in accordance with the privacy policy of Wal-Mart or the credit card company or whether there would have been a... Whether your client would have been placed on notice as to these privacy policies? So, Your Honor, that I think... I don't agree that that is the determining factor. And the reason I say that is because if we look at this... If we look at the case of United States v. Mathis out of this court in 2013, that's the 738 F3rd 719. We see that there's sort of the most closest I can come for this citation, that whether the expectation of privacy is reasonable is a question of societal norms. And so I would suggest that it isn't a question of the business's privacy policies, but a question of the consumer's expectation. Well, if the consumer's expectation is completely at odds with the privacy policy that the consumer receives notice of, wouldn't that have to do... Wouldn't that relate to whether the consumer had any reasonable expectation of privacy or not? I don't think so because... And the reason I don't think so is because we're talking about what society expects the government to be kept out of, not Wal-Mart. So I may be perfectly at ease with Wal-Mart knowing my purchase history, and I may even be at ease with Wal-Mart sharing my purchase history with Amazon, but I may not want Wal-Mart to share it with the government. Well, yes. Clearly, if you have done something that you don't want the government to know about, that might be your position. Or even... But does it... I mean, what legal difference? Or even if I may have done something that I don't think is the government's business... For example, I may not want the government to know what books I read. I may not want the government to know whether I'm attempting to terminate a pregnancy, for example. Whether I'm seeking treatment for that. I may not want the government to know that. Not necessarily because I've done something wrong, but simply because we have a privacy right. Because we have the right to... The Fourth Amendment's goal is to secure the privacies of life. We know that from Boyd v. United States. I don't know. If you're thinking about it, though, why would your interest, if you were the bank robber, why would your interest in the government not knowing about it be stronger than the government's interest in obtaining evidence of a crime, and the public's interest in obtaining evidence of a crime? So remember, Your Honor, I'm not saying that the government may never reach this information. Only that reaching this information is a search, and the government must do so with warrant. Well, the reason I phrased my earlier questions the way I did is because this kind of information, in my experience, is obtained by subpoena all the time. Yes, Your Honor. You disagree with that? I don't disagree with it. What I posit to the Court is that though that is true, as our society moves into an area where this information is so broad and all-encompassing, and touches on so many privacies of life, far beyond just the deposit records of Miller, we must rethink whether the fact that it's reached all the time is something that we want our government to be able to do. I see that my red light is on, so I am grateful for your time, Your Honors. Thank you. Thank you. May it please the Court, Sam Fitzpatrick for the United States. The District Court correctly denied the defendant's motions to suppress. No violation of the Fourth Amendment occurred during the subpoena of Walmart's business records, the seizure of the defendant's car, or the search of his cell phone. I'm happy to answer questions about any of the three issues that are raised by my colleague, but I would like to focus on the subpoena of Walmart's business records. The subpoena of Walmart's business records was allowed under well-established law. A defendant has no reasonable expectation of privacy and information that he voluntarily discloses to a business during a commercial transaction. That principle makes good sense, because a person necessarily loses privacy when they share information with a third party. In addition, that principle makes sense for another reason, too. A party assumes the risk when they voluntarily share information with a third party that that third party might share that information with law enforcement. That principle is long-standing, and it's well-settled. It's been reaffirmed by the Supreme Court many times, and it's been reaffirmed by this Court many times. In this case, it involves the application of that well-established principle to a narrow subpoena that covered one customer and one transaction. Do you have a case directly on point where you're talking about the subpoenaing of consumer data, under these facts, instead of going to cases that may rely on cell phone information and other things? Is there a case that you rely on that's directly on point here? The closest two cases, factually, are this Court's decisions in FIBS and this Court's decision in Guest. In FIBS, the material that had been subpoenaed was credit card statements, and in Guest, the material was a defendant's subscriber information to an online bulletin board. And I think that information, the combination of those two cases, are the sorts of information that we see here. The defendant voluntarily created a Walmart pay account. He was not required to have a Walmart pay account to shop at Walmart, but he decided to opt for a Walmart pay account as his method of paying for the items that he purchased there. He voluntarily provided his name, his address, his credit card information to Walmart, and he knew that Walmart tells customers that it keeps business records for a variety of legitimate purposes. In fact, that's one of the features of Walmart pay, is that it tracks a customer's purchasing history, which makes returns easier, and it makes obtaining receipts easier. In addition, Walmart tells customers, as you pointed out, Judge Clay, Walmart tells customers that it routinely discloses information to law enforcement. And that was in the record below in the district court, specifically at record 166, page ID 1141-42. In addition, the defendant here went to Walmart in person. He drove to their parking lot, he walked into the store, he got the items that he wanted to purchase there, and he checked out. And when he did that, he exposed himself to Walmart's employees and to Walmart's surveillance cameras. So are you saying that even if there was an error with regard to the subpoena, it was harmless? Well, yes, Your Honor. I mean, the fact that he was there in person, I think, adds another layer to show that he has no reasonable expectation of privacy in the things that he bought there. Is the point he could have been identified in some way by the Walmart clerk who waited on him? I missed the import of that. Yes, Your Honor. The point is that when he chose to go there in person, anyone could have seen him walk in there and they could have seen the things that he purchased. And in fact, Walmart's surveillance cameras did see the things that he purchased. And in addition, I would like to highlight that the subpoena here was very narrow. It covered one customer, one transaction, and one day. Unless the Court has any further questions about the subpoena of Walmart. Your Honor, I would like to touch on one thing that my colleague mentioned, and that was the Carpenter case. I think that the information here is distinctly different from the cell site location information in Carpenter for three reasons. Number one is that cell site location information, the Court noted that cell phones are indispensable to participate in modern society. And that simply is not the case with the Walmart pay application. It's not necessary to participate in modern life, and it's not even necessary to shop at Walmart. In addition, the cell site location information at issue in Carpenter, it's inescapably and automatically collected. And here, the defendant's purchasing information was collected only when he chose to shop at Walmart, and only when he chose to use the Walmart pay application. And the third distinction, I think, is that the cell site location information provided an all-encompassing record of the defendant's whereabouts in Carpenter. His physical location and his movements for 127 days. And here, the Walmart pay captured just a snapshot of a business record that was compiled during a single transaction on a single day. So under well-settled precedent, the defendant lacked a reasonable expectation of privacy in Walmart's business records. And therefore, the subpoena of those records did not implicate his rights under the Fourth Amendment. For the reasons stated here today and in the United States Brief, this Court should affirm. Oh, one question before you sit down. Yes, Your Honor. With regard to this other issue in the case, I know there are two other issues at least, but whether the issue, whether the government took too much time to execute the warrant for seizing the cell phone data information after the issuance of the warrant, and the reason and explanation given for the delay was that there was delay at the government facility in accessing the phone, and so the law enforcement had to wait until that could be accomplished. I imagine there are other, there are multiple sources of IT personnel or companies that could have done that earlier without waiting that extended time. Why was it reasonable, and maybe the time expended doesn't make a lot of difference in our analysis, but why was it reasonable for the government to have waited that amount of time to extract the data, and was it reasonable to do so, to await that time? Yes, Your Honor. The, I think it was reasonable to wait that amount of time before the government was able to unlock the device, and I would point the Court to Criminal Rule 41, and specifically the advisory committee notes. They contemplate that it may take a substantial amount of time for the government to reach encrypted data and digital media, and the court, the advisory notes specifically point to the workload of computer labs and the difficulties created by encryption. And for those reasons, the Criminal Rule 41 establishes a two-part deadline when the United States is going to search and seize a cell phone, and so long as the United States has initiated the process of executing the warrant, which in this case happened when the United States took the cell phone out of the storage locker and submitted the request to the FBI laboratory to unlock it, so long as that happens within the warrant's 14-day window, under Criminal Rule 41, the United States has complied with the terms of the warrant. All right. Thank you, Your Honor. Thank you very much.  May it please the Court, I'd like to address the question about the harmless error. I disagree that there, that we can get to that based on the identification of the person in the Walmart. I think the Court will find that the record establishes that law enforcement had found a purchase from Walmart they were interested in, and they went to the Walmart and identified that there was a person who picked up this purchase, and that person drove a yellow Dodge. That's at page ID 1068. But they didn't know anything else about that person other than he drove a yellow Dodge. So they issued the subpoena to Walmart, seeking to identify the person who had made that purchase. And that is the result of that subpoena. The subpoena that's at issue here is how they identified the name of the individual who had made these purchases. That's page 839. I'm sorry, Your Honor. Was there an identification, I can't remember. Was there an identification of the individual on surveillance video of him making the purchase, or was that not a part of the record? I just can't remember. I don't want to misspeak. So with the understanding that I'm going off my memory, I believe that they had the individual on video, but did not know anything else, anything about him. Other than... But once they learned about him, presumably they would, in his identity, presumably they would have been able to go back, look at that video, and use that as a part of the prosecution evidence in the case. That's my memory. That's my memory of the facts of the case, Your Honor, yes. And so when we talk about going in to pick these things up, I just want to make one last point, that the first thing that you do when you create something like this Walmart Pay application is you create a name and you create a password. And that's something that we should be considering in terms of our question about the reasonable expectation of privacy, that what the consumer does, the first thing he does, is find a way to keep everyone else out. So for those reasons, I ask that the district court be reversed. Thank you, Your Honors. It's been a pleasure. The case shall be submitted.